Argued and submitted November 19, 2015, reversed and remanded
May 24, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH EMILE JONES,
*Defendant-Appellant.*

Multnomah County Circuit Court
121135035; A155326

397 P3d 595

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With her on the supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Wollheim, Senior Judge.

## DUNCAN, P. J.

Defendant appeals his conviction for second-degree robbery, assigning error to the trial court's admission of evidence of his convictions for three prior robberies. He argues, among other things, that the convictions were not relevant for the nonpropensity purposes that the state advanced and that admission of the evidence was not harmless. The state responds that the trial court did not err in admitting the convictions because they were relevant to defendant's intent. We agree with defendant that the trial court erred in concluding that the evidence was relevant on any theory that the state advanced, and we agree that the error was not harmless. Accordingly, we reverse and remand.[1]

We review a trial court's ruling admitting evidence of other acts as relevant to a nonpropensity purpose contemplated by OEC 404(3) for errors of law, *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017), and in light of the record that was before the court at the time it made its decision, *State v. Johnson*, 281 Or App 51, 53, 380 P3d 1023 (2016).[2]

At the outset of the trial, the state moved *in limine* to introduce evidence of defendant's three prior second-degree robbery convictions and three prior third-degree robbery convictions. The state's memorandum in support of its motion provided some factual context based on what it expected the evidence of the charged conduct to show, and the theory of defense it expected defendant to raise at trial. The court ultimately ruled on the motion on the second day of trial. The following facts are drawn from the memorandum

---

[1] Because we agree with defendant's relevance argument, we do not reach his other arguments regarding the admissibility of the evidence and the necessity of limiting instructions regarding the evidence.

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

"[W]hen applied to OEC 404(3), 'character' refers to disposition or propensity to commit certain crimes, wrongs or acts." *State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986). OEC 404(3) is an "inclusionary" rule, which allows "judges to resort to any theory of logical relevance when ruling on 'prior crime' evidence that does not run afoul of the 'propensity to commit crimes or other acts' prohibition." *Id.*

and the colloquies concerning the motion, and from the evidence and arguments presented at trial up to the point that the trial court made its ultimate ruling, on the morning of the second day of trial, that evidence of three robbery convictions—one second degree and two third degree—would be admitted.

At trial, the state presented evidence that, on the evening in question, defendant entered a pizza restaurant and told the manager, Zimmerman, "'I'm here to rob you'" or "'I'm going to rob you.'" Zimmerman was between defendant and the cash register. Zimmerman "was kind of shocked" and defendant repeated, "'I'm going to rob you.'" Defendant was holding one fist up, and with the other hand, he reached in his waistband, as if he were grabbing for a weapon, and Zimmerman thought he was "trying to intimidate" him. At that point, Zimmerman pulled a gun out from behind the counter and pointed it at defendant. Defendant put both hands up, and said, "'shoot me now, just shoot me. I want to commit suicide, just shoot me.'"

Zimmerman put his gun away, grabbed defendant, and put him outside. Defendant started to walk away, and Zimmerman went back inside, locked the door, and called 9-1-1. He told the 9-1-1 operator that defendant "was going to rob" him. He also said that defendant "wanted me to shoot him," and that defendant was "probably drunk or he was on drugs or something." Zimmerman had not noticed anything specifically that suggested defendant was using drugs or alcohol, but he thought that "there was just something off that just didn't add up." While Zimmerman was speaking with the 9-1-1 operator, defendant returned and yelled outside the restaurant. Zimmerman told the 9-1-1 operator that defendant was yelling through the window for Zimmerman to shoot him. At trial, Zimmerman said he could not hear what defendant was yelling through the window. Police located and arrested defendant a short while later at a nearby bus stop.

Defendant was charged with second-degree robbery. ORS 164.405.[3] Defendant's opening statement suggested

---

[3] ORS 164.405 provides, in part:

"(1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

that he would present witnesses who would testify that he had expressed that day that he planned to kill himself, and had asked for help with killing himself. The state's memorandum similarly stated that defendant had provided notice of several witnesses who were prepared to testify that defendant was depressed and suicidal on that day. The state anticipated that defendant would present a defense disputing that he had the intent to commit robbery.

In its memorandum, the state argued that defendant's prior robbery convictions were relevant for the nonpropensity purposes of proving intent, motive, plan, and absence of mistake or accident under established theories of relevance contemplated by OEC 404(3). The state argued that each theory of relevance related to whether defendant had the requisite intent when he engaged in the charged acts. The state did not advance an argument that, in spite of the propensity prohibition contained in OEC 404(3), under OEC 404(4) the evidence would nonetheless be admissible *as propensity evidence* if relevant to a fact at issue.[4] The state's

---

"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another person actually present."

In turn, ORS 164.395 provides, as relevant here:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle."

[4] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) ORS 40.180, 40.185, 40.190, 40.195, 40.200, 40.205, 40.210 and, to the extent required by the United States Constitution or the Oregon Constitution, ORS 40.160;

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

In *State v. Williams*, a case decided after the trial in this case, the Supreme Court concluded that OEC 404(4) had "effect[ed] a significant change in the law." 357 Or 1, 20, 346 P3d 455 (2015). Before OEC 404(4) was enacted, evidence of other

citations to OEC 404(4) were in the context of its argument that, under that rule as it was then interpreted, the trial court was precluded from conducting OEC 403 balancing except to the degree that it was constitutionally required; the state continued to refer to intent, motive, plan, and absence of mistake or accident as the theories of relevance.

Defendant argued that the state had failed to establish, as the proponent of the evidence, that the convictions were admissible for a nonpropensity purpose. He specifically argued that the relevance of the prior robberies, for the purposes that the state had identified, could not be determined without reference to the circumstances or facts underlying the convictions.[5]

The trial court initially noted that "intent, in this case, is going to be at issue," and that because OEC "404(4) seeks to take any balancing tests out of the analysis[,] *** I don't really have a basis for excluding it." Defendant asked, before the court made a final ruling, that the state be required to produce the police reports related to the convictions. "I think if you want to analyze this and see the relation between the past cases and this case, that, I think, is what we are trying to do—to see if those can demonstrate intent in this case. I'd need to see the facts of those

_____

acts offered to prove character and propensity was "categorically inadmissible under OEC 404(3)." *Id.* But after enactment of OEC 404(4), at least in a prosecution for child sexual abuse, other acts evidence is admissible under OEC 404(4) to prove character and propensity if the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. *Id.* The court expressly did not decide whether evidence relevant to proving only character and propensity could be admissible in other types of prosecutions. *Id.* at 20 n 19. In *Baughman*, the court noted that it "has suggested, but not yet decided, that the federal constitution may, as a matter of law, prohibit the admission of other acts evidence to prove propensity in a criminal case" involving "crimes other than child sexual abuse." 361 Or at 403 n 8.

[5] The only information in the record concerning the facts of the prior robberies is in the state's memorandum in support of its motion *in limine*. In the section setting out its theory of relevance to proving "intent," the state said that it

"plans to use the defendant's prior burglary [*sic*] convictions to show not only the similarity of the charges, but also the similarity of the underlying facts. The events leading to defendant's prior convictions, almost without exception, involve defendant entering offices without authorization under false pretenses or stealing televisions from hotel employee break rooms."

At the time the trial court ruled, it was clear that the state did not intend to offer evidence of the underlying facts of the robberies.

cases before I could really—and I think, before Your Honor could really—make that determination[.]" After seeing the police reports the next morning, defendant argued that the prior robberies were not relevant. "I think that these police reports are kind of an example of why it's dangerous just to offer the convictions as proof of intent, especially on the 443 [*sic*]." Defendant argued that using the prior crimes to prove intent required an analysis of the facts of the prior crimes, and that for the prior crimes to be relevant based on the state's theories, the state's evidence would have to include more than just proof of the convictions. Defendant contended, "I think that this is clearly a case where the allegations in this case are different than the factual pattern in those cases, so it actually misleads the jury even further to only offer the convictions."

The trial court noted that the state was not offering the police reports. The motion concerned only whether the evidence of defendant's convictions for robbery would be admitted on any of the state's proffered theories of relevance. The court stated that it would not consider the circumstances of the convictions, because those facts were not being offered. It then ruled that the state would be allowed to use the three most recent robbery convictions—one second-degree and two third-degree—based on the analysis in the state's memorandum.

On appeal, defendant assigns error to the admission of those prior robbery convictions. He argues, among other things, that the trial court erred in concluding that the state had established the logical relevancy of the convictions to any of the OEC 404(3) nonpropensity purposes it identified below, without considering the underlying facts. To use his prior conduct to prove his intent in this case, he contends, the state had to show more than just the convictions themselves; it had to show that the circumstances of the prior crimes made them relevant to a fact in issue on something besides a propensity-based theory of "once a robber, always a robber."

The state contends that, under *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), which was decided after the conclusion of defendant's trial, it does not need to establish

that the other acts evidence was admissible under OEC 404(3). It states that, "[b]efore *Williams*, this court long assumed that evidence of a defendant's other acts was 'relevant' for purposes of OEC 404(4) only if it was also admissible under OEC 404(3)." But, the state argues, *Williams* held that OEC 404(4) supersedes OEC 404(3), 357 Or at 15, and, therefore, under OEC 404(4) other acts evidence is "generally admissible for any purpose, so long as it is logically relevant, * * * subject only to the Due Process Clause." The state does not on appeal specifically assert, or engage in any analysis related to, the established nonpropensity theories of relevance associated with OEC 404(3) that it advanced before the trial court.

The Supreme Court recently clarified *Williams* in *Baughman*, which was issued after both briefing and argument were complete in this case. In *Baughman*, the court set out the analytical framework that applies to the admission of other acts evidence, and clarified the interplay of OEC 404(3), OEC 404(4), and OEC 403. To begin with, the court explained that its statement in *Williams* that OEC 404(4) supersedes OEC 404(3) meant only that OEC 404(4) supersedes the first sentence of OEC 404(3), which provides that "'[e]vidence of other crimes, wrongs or acts is *inadmissible* to prove the character of a person in order to show that the person acted in conformity therewith.'" *Baughman*, 361 Or at 404 (quoting OEC 404(3) (brackets and emphasis in *Baughman*)). OEC 404(4) does not supersede the remaining sentence in OEC 404(3), "which provides that other acts evidence 'may be admissible for other purposes,'" and lists examples of such purposes. *Id*. The court noted that, when other acts evidence is not offered for a propensity purpose, "but instead is offered for a nonpropensity purpose, then analysis under OEC 404(4) is unnecessary; the evidence 'may be admissible' under the second sentence of OEC 404(3)." *Id*. Accordingly, *Baughman* instructs that, when presented with an objection to other acts evidence, a court should first analyze any proffered nonpropensity purposes under OEC 404(3). *Id*. Then, only if necessary, should it proceed to analyze any OEC 404(4) theories.[6] *Id*. at 404-05.

---

[6] The court also concluded that, when evidence is relevant for either OEC 404(3) or OEC 404(4) purposes, OEC 403 balancing applies. *Baughman*, 361 Or

We begin, therefore, by considering the OEC 404(3) nonpropensity purposes and theories of relevance that the state advanced below, on which the trial court admitted the evidence. When "examining evidence to be admitted under the categories or exceptions to OEC 404(3), a trial judge first must determine whether the prior act is relevant to the issues being tried." *State v. Pitt*, 352 Or 566, 576, 293 P3d 1002 (2012). As the Supreme Court has explained, in applying OEC 404(3) principles of relevance, "'[t]he admissibility of evidence of other crimes must not be based upon the relationship of the evidence to one of the listed categories, rather it must be based on its relevancy to a fact at issue in the trial *** other than proving a propensity to commit certain acts.'" *Id.* (quoting *State v. Johns*, 301 Or 535, 549, 725 P2d 312 (1986) (alterations in *Pitt*)). The proponent of the evidence "has the burden of showing that the proffered evidence is relevant and probative of some noncharacter purpose." *Pitt*, 352 Or at 576.

OEC 404(3) permits evidence of other acts that bear on a person's character, if the evidence is offered for a noncharacter purpose. *Pitt*, 352 Or at 576. In analyzing whether defendant's prior convictions were relevant to a nonpropensity purpose, we must consider what that evidence was, and how it might be relevant to a fact at issue. We begin by considering the precise evidence that the trial court admitted: certified copies of the judgments of conviction for one prior second-degree robbery and two prior third-degree robberies. The state did not present any evidence of the circumstances of those prior offenses, the factual bases, or even the theories on which defendant had been charged or convicted in the prior cases. *See* ORS 164.395 (a person commits third-degree robbery if in the course of committing or attempting to commit theft or unauthorized use of a vehicle, the person uses or threatens the immediate use of physical force with the intent of preventing or overcoming resistance, or compelling a person to deliver property or otherwise engage in conduct that might aid in the theft or unauthorized use of a vehicle); ORS 164.405 (a person commits second-degree

---

at 404-05. The court did not decide, however, "whether, in addition to objecting to the admission of such evidence, a party also must explicitly seek balancing under OEC 403." *Id.* at 404 n 9.

robbery when the person violates ORS 164.395 and represents by word or conduct that the person is armed with a dangerous or deadly weapon, or when the person is aided by another person actually present).

The state argued that the convictions were probative of facts that were of consequence in the case—whether defendant intended to commit theft, and whether he intended to threaten the use of force. We respectfully disagree that the state's theory does not rely on a character and propensity inference. The relevance that the prior convictions, by themselves, would have, if any, depends upon a character inference of the kind that OEC 404(3) prohibits. *See* OEC 404(3) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."). That is, the relevance theory, for evidence of the convictions alone, is based on reasoning that, because defendant has previously been convicted of robberies, he has a propensity for committing robberies, which makes it more likely that he intended to commit another robbery at the time of the charged acts.

In order to establish that defendant's prior conduct was relevant for one of the OEC 404(3) purposes the state identified below—to provide evidence of intent, absence of mistake or accident, plan, or motive—the state would have had to present more evidence about the prior conduct. Specifically, to establish that the prior conduct was relevant to show, using the doctrine of chances, that defendant acted intentionally and not by accident or mistake, the state would have had to establish that the prior conduct and the charged conduct were similar, as required by *Johns. State v. Turnidge (S059155)*, 359 Or 364, 435, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017) (*Turnidge*) (explaining that evidence offered to prove intent on a doctrine-of-chances theory must satisfy the multi-factor *Johns* test); *see also State v. Tena*, 281 Or App 57, 65 n 4, 384 P3d 521 (2016), *rev allowed*, 360 Or 752 (2017) (noting that the doctrine of chances supports the admission of other acts evidence only when the other acts and charged acts are similar and claimed to have been the result of an accident or mistake). Likewise, to establish that the prior conduct was relevant

to show that defendant acted pursuant to a plan, the state would have had to show that there was a high degree of similarity between defendant's prior conduct and the charged conduct. *Turnidge*, 359 Or at 438-40 (discussing "spurious plan" evidence, that is, "evidence of a series of prior similar acts offered to establish a plan or design to commit those acts"). And, to establish that the prior conduct was relevant to show defendant's motive to commit the charged act, the state would have had to show a "substantial connecting link between the two acts," which, here, would require more than simply showing that defendant had been convicted of robbery in the past. *Id.* at 451 (internal quotation marks omitted); *State v. Wright*, 283 Or App 160, 171-72, 387 P3d 405 (2016) ("'[T]he required connection can be inferred when,'" considering "'the nature of the evidence at issue, evaluated in light of the circumstances of the'" charged conduct, the inference is a logical one. (Quoting *Turnidge*, 359 Or at 450.)). In sum, the state failed to establish the admissibility of the evidence—the judgments of conviction—on any of the OEC 404(3) theories of relevance for a nonpropensity purpose that the state advanced below.[7]

We turn next, then, to OEC 404(4). *Baughman*, 361 Or at 404-05. To the extent that the state's argument on appeal advances a new theory of admissibility that it did not advance below—that the evidence is relevant and admissible *as propensity evidence* of defendant's intent—it has not argued that that alternative theory meets the requirements for us to consider it as an alternative basis for affirmance. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining that the "right for the wrong reason" principle allows—as a matter of discretion—a reviewing court to affirm a lower court's ruling on an alternative basis, and stating requirements); *State v. Goff*, 258 Or App 757, 763, 311 P3d 916 (2013) (treating alternative theories of admissibility as proposed alternative

---

[7] The state asserts in a footnote that "the prosecutor's theory appeared to be based on defendant's knowledge." The prosecutor argued to the jury that the prior convictions showed that "defendant knew 'what robbery is.'" That theory of relevance was not presented to the trial court before it ruled. For similar reasons as those we further discuss below, we decline to consider that theory as an alternative ground for affirmance. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001); 285 Or App at 690-91.

bases for affirmance). In the absence of any developed argument on that issue, we decline to consider the alternative theory for the first time on appeal. *See State v. Kolb*, 251 Or App 303, 312, 283 P3d 423 (2012) ("Even assuming that the development of the factual record before the trial court would not have been materially affected if that contention had been raised initially, * * * the fact remains that to address that contention meaningfully would require us, in the first instance—without legal record development or any real assistance from the parties—to decide difficult, nuanced, and systemically significant issues. We respectfully decline to do so.").

Finally, we conclude that the trial court's erroneous admission of defendant's prior robbery convictions was not harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?"). If erroneously admitted evidence relates to a central issue in the case, it is more likely that that error substantially affected the verdict. *State v. Richards*, 263 Or App 280, 283, 328 P3d 710 (2014). Under these circumstances, we cannot conclude that the trial court's error had little likelihood of affecting the verdict.

Because the trial court erred by admitting the prior robbery convictions, and because that error was not harmless, we reverse and remand.

Reversed and remanded.